Connie George **HOLMES** and Joe Bedami, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 8084.

United States Court of Appeals Fourth Circuit.

Argued Sept. 27, 1960.

Decided Nov. 22, 1960.

Irvine F. Belser, Jr., and Claud N. Sapp, Columbia, S. C., for appellants.

William A. Horger, Asst. U. S. Atty., Columbia, S. C. (N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

These defendants have been twice tried and convicted upon charges of interstate transportation of stolen automobiles. We found it necessary to reverse their first conviction because of error in the application of the Jencks Act.[1] We find it necessary to reverse the second convic-

1. 271 F.2d 635.

tion because of the improper communication by a court official of prejudicial information to the jury.

Despite the careful instructions they had received, one of the feminine members of the jury, during lunch immediately after submission of the case and just before the jurors commenced their deliberations, inquired of one of the deputy marshals in charge of the jury, or generally of those in her hearing, "I wonder where the defendants are staying?" To this the deputy marshal responded, in effect, that he did not know where Holmes was staying, but he knew that Bedami was staying in the Lexington County jail serving a 6-year sentence.

Inevitably, there were minor variations in the versions of the conversation subsequently recounted by the participants and those who heard it. The deputy marshal said the juror asked him where Holmes was staying and that he replied, "I don't know about Holmes, but I can tell you where Bedami is staying—he is in the Lexington County jail—I take him back and forth every day." In an affidavit, the deputy marshal suggested, and other jurors stated, that the jurors learned specifically of the sentence on a prior conviction, not from the official but from newspaper articles published when the trial was in progress.

If we accept the marshal's version of the incident, it was confirmation out of his own knowledge of what some of the jurors had read in the newspapers. With whatever skepticism these jurors may have read the published report of Bedami's prior conviction, those who heard the marshal's statement were left no room for doubt. It is clear that the deputy marshal improperly communicated information to members of the jury which, alone or in combination with

newspaper articles they had read, informed them of the prior conviction.

When, shortly before and during a trial, public news media irresponsibly publish incompetent and prejudicial information, the difficulty of maintenance of fairness in the administration of justice is manifest. That the work of the courts may continue without making jury service unduly burdensome, we are allowed to indulge an assumption that the individual jurors will observe the court's admonition and will not read articles or listen to reports about the subject of the trial. When it affirmatively appears, however, that individual jurors have read newspaper articles containing information, incompetent if offered at the trial, that the defendant had been previously guilty of criminal conduct, the Supreme Court has held that a new trial is mandatory.[2]

Here there is more than jury misconduct in reading forbidden matter. There was the private communication of the court official to members of the jury, an occurrence which cannot be tolerated if the sanctity of the jury system is to be maintained. When there has been such a communication, a new trial must be granted unless it clearly appears that the subject matter of the communication was harmless and could not have affected the verdict.[3]

The subject matter of the communication was far from harmless. Nothing had occurred at the trial to make relevant evidence of a prior conviction of Bedami. The judge would not have permitted reference in open court to such a conviction. When the jury was privately informed of that fact[4] by the deputy marshal out of the presence of the court and of counsel, there was not so much as

2. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250.

3. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; Wheaton v. United States, 8 Cir., 133 F.2d 522.

4. It is suggested that if the deputy marshal did not mention a 6-year sentence, as he said, the jurors might have

understood him to mean only that Bedami was being held on the charges for which he was being tried. Clearly the jurors put no such construction upon the marshal's words, either because he did refer to a 6-year sentence, or because they related what he said to what they had previously read.

opportunity to mitigate its obviously prejudicial effect.

■ We think this improper communication by a court official to members of the jury required an order granting a new trial.[5]

■ Since the matter must be retried, we think justice requires a new trial for Holmes as well as for Bedami. The two were being jointly tried for the transportation of the same vehicles. Holmes took the stand and testified that he was a legitimate dealer, that he received these automobiles on consignment in the regular course of business and without reason to believe they were stolen, and that he openly offered them for inspection by professional auctioneers and prospective purchasers. To that extent his defense was independent of Bedami's. An inference that he knew the vehicles were stolen, however, was largely dependent upon his association and joint activity with Bedami and evidence of Bedami's conduct in Florida where the vehicles were stolen. A finding of guilt was so dependent upon the connection between the two, that collateral information clearly prejudicial to Bedami could hardly have been harmless to Holmes.

The motion for new trial was filed on the sixth day after the judgment. The District Court was of the opinion it was untimely. United States v. Holmes, D.C. E.D.S.C., 183 F.Supp. 361.

Rule 33 of the Rules of Criminal Procedure, 18 U.S.C.A., permits a motion for new trial on the ground of newly discovered evidence within two years after final judgment. A motion for new trial on any other ground must be made within five days after the verdict, or within such further time as may be fixed by the court during the 5-day period.

It is true that newly discovered evidence bearing upon a substantive issue does not require an order of a new trial, unless it is material to the substantive issue and is likely to lead to an acquittal on a new trial. Evidence that a court official on a previous trial had improperly communicated prejudicial information to members of the jury would be entirely irrelevant on a subsequent trial of these defendants. There is no reason, however, to import into the procedural rule the standards for appraisal of a particular kind of newly discovered evidence.

■ Whether newly discovered evidence tends strongly to establish a defendant's innocence or shows the jury to have been subjected to improper influence, the operation of the procedural rule should be the same. In either case, the movant makes a substantive showing that he is entitled to a new trial. In either case the motion is based upon information that the defendant does not have when the verdict is received. There is no assurance in advance that the information will come to light in so limited a time as five days after the verdict. Requirements of diligence and promptness are appropriate, for they provide flexible limitations which may be adapted to fit the circumstances.[6] A limitations period of five days after the verdict, reasonable enough when the motion is based on occurrences at the trial, would be quite unreasonable applied to a motion based upon newly discovered evidence. This, the rule plainly recognizes.

In Mills v. United States, 4 Cir., 281 F.2d 736, we recently considered the timeliness of a motion for new trial made, in part, upon the ground of after-discovered evidence relevant, if at all, to the substantive issue of guilt and, in part,

---

5. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250; Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; State v. Dallas, 35 La.Ann. 899.

6. The attorneys for the defendants first learned of the communication two days after the verdict. This prompted additional investigation and the preparation of affidavits. There was the intervention of a weekend, and the motion, with supporting affidavits attached, was filed on the sixth day after the judgment. The attorneys proceeded promptly. There was no want of due diligence.

upon other grounds. We held that the motion, made after the lapse of the 5-day period, came too late, for the after-discovered evidence did not warrant a new trial under the standards applicable in appraising that kind of evidence. Insofar as the motion may have had substantive merit, therefore, it was properly denied upon the ground it was not made within the 5-day period.

Here, however, we have held that the newly discovered evidence does warrant a new trial. The applicable standards in reaching that determination are not those which would govern our decision if the new evidence bore upon the substantive issue of guilt. It bears instead upon the integrity of the jury's verdict in the completed trial. Since, in every sense, the evidence was newly discovered after the trial and is of such character that under the applicable standards it fully supports a timely motion for a new trial, the motion, procedurally, should be classified as one based upon the newly discovered evidence which, alone, supports it.

Similar motions founded upon after-discovered evidence affecting the integrity of the jury's verdict have been treated as based upon newly discovered evidence within the meaning of the procedural rule. Rubenstein v. United States, 10 Cir., 227 F.2d 638. See Massicot v. United States, 5 Cir., 254 F.2d 58; Armstrong v. United States, 8 Cir., 228 F.2d 764.

■ When the newly discovered evidence bears upon the substantive issue of guilt, we are necessarily concerned with its admissibility upon a subsequent trial and its probable effect upon the result of that trial. When, however, it bears upon the integrity of the earlier trial, we apply a different set of standards to determine its sufficiency to support a timely motion. Whether the evidence warrants a new trial for the one reason or for the other, when it is newly discovered after the trial, it is governed by the 2-year limitation.

The defendants complain, also, that FBI reports containing statements of the prosecution's witness and demanded by them were handed up to the court after portions had been excised by the prosecution. The excised material was also handed up to the court, and the court examined it. Apparently the same scissored copies of the reports used in the previous trial were those tendered in this.[7] The defendants contend that this procedure shows that the prosecution, rather than the judge, determined what portions of the reports should be turned over to the defense.

We think the Act[8] does not require the District Court to review voluminous material without the assistance of indication from the prosecution of those portions the prosecution thinks irrelevant and which should be withheld. Any appropriate means may be adopted so that his attention may be directed to those portions of the reports which the government contends are unrelated. So long as he considers each of these in context and then determines what should be excised, he complies with the Act's requirement. His perusal of masses of material, as to which the prosecution does not contend the defense is not entitled, would serve no useful purpose, except insofar as it bears upon his appraisal of the material the prosecution claims to be unrelated.

■ While we find no merit in the contention that the District Court may not have the aid of the prosecution in directing his attention to those particular portions of the reports it believes unrelated, it is important that those portions be considered by him in their context and that, after the reports have been excised by him or under his direction, they should be delivered to the defense with their continuity unimpaired. Doubtless these purposes will be served upon a retrial if fresh copies of these reports are produced and are intact when first presented for the court's examination.

Reversed and remanded.

---

7. See the earlier opinion of this court reported in 271 F.2d 635.

8. 18 U.S.C.A. § 3500.