**UNITED STATES of America,**
**Appellee,**

v.

**Sam FELDMAN, Appellant.**

**No. 200, Docket 27050.**

United States Court of Appeals
Second Circuit.

Argued Jan. 17, 1961.

Decided Feb. 28, 1962.

man Gelfand, Attorney, Dept. of Justice, New York City (Lee Loevinger, Asst. Atty. Gen., and Richard A. Solomon and Harry G. Sklarsky, Attorneys, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Menahem Stim, New York City (Allen S. Stim, New York City, on the brief), for appellant.

Before MEDINA, SMITH and HAYS, Circuit Judges.

SMITH, Circuit Judge.

This is an appeal from a judgment of conviction in the Southern District of New York upon a jury verdict of guilty of obstructing commerce by extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, and conspiring to do so, Edward Weinfeld, Judge. Judgment affirmed on both counts.

On June 23, 1959 a six count indictment was returned against eleven individual and one corporate defendant. The defendants included appellant, President of the Newspaper and Mail Deliverers Union; Stanley Lehman, Secretary-Treasurer of the Union; Harry Waltzer, William Walsh, John Lawrence, Jr., and Angelo Lospinuso, business agents of the Union; Irving Bitz, an officer and stockholder in Bi-County News and Bronx County News; William Fello, an officer and stockholder of Bi-County News Corp.; Rocco Fello, an employee of Bi-County News Corp.; Charles Gordon, an officer and stockholder of Bronx County News Corp.; Michael Spozate, an officer of Pacific News Corp.; and Pacific News Corp.

The appellant was tried together with defendants William Walsh, John Lawrence, Jr., Angelo Lospinuso, Stanley J. Lehman, William Fello, Rocco Fello and Bi-County News Corp., the trials of other defendants having been severed.

Count One charges all of the defendants with having engaged in an unlawful combination and conspiracy in restraint of interstate trade in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. Count Two charges all the defendants

Patrick M. Ryan, Attorney, Dept. of Justice, Washington, D. C., and Her-

with having engaged in an unlawful combination to monopolize trade in violation of Section 2 of the Sherman Act, 15 U.S. C.A. § 2. Count Three charges defendants Lospinuso, Walsh and Waltzer with extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, during January and February of 1955. Count Four charges the same defendants with a conspiracy to commit the extortion charged in Count Three. Count Five charges that Sam Feldman (appellant), Irving Bitz, Stanley J. Lehman, John Lawrence, Jr., Harry Waltzer, and Michael Spozate did knowingly and wilfully obstruct, delay and affect the movement of newspapers and magazines in interstate commerce by extorting the sum of $45,000 in February 1957 from the officers and agents of Suburban Wholesalers Association in violation of the Hobbs Act. Count Six charges the defendants named in Count Five with a conspiracy to commit the extortion alleged therein.

Count Two was dismissed as to all defendants at the close of the government's case, and at the close of the entire case the court granted a motion to dismiss Count One as to the remaining defendants. Verdicts of acquittal were directed for defendants William Fello, Rocco Fello, Stanley J. Lehman, John Lawrence, Jr., and Bi-County News as to all counts pending against them.

Appellant Feldman was president of the Newspaper and Mail Deliverers Union which was the sole bargaining agent for the employees of the members of Suburban Wholesalers, engaged in the handling and delivery of newspapers and magazines. The contract between Suburban and the Union was due to expire January 31, 1957. Consequently, sometime during the latter part of January a meeting was held in the Belmont Plaza Hotel which was attended by: Feldman as president of the union; certain members of Suburban Wholesalers; Abraham Rosen and Isaac Cohen as members of Morning Wholesalers, an informal association of newspaper distributors which like Suburban handled contract negotiations with the union for its members;

and Irving Bitz, an officer of Bi-County News Co. The government presented testimony of four witnesses—James Gaynor, President of Gaynor News Co., and Vice President of Suburban; John Fylstra, President of Passaic News Co., and Treasurer of Suburban Wholesalers; Abraham Rosen, Treasurer of Metropolitan News Co. and a member of Morning Wholesalers; and Isaac Cohen, President of Hudson County News Co. and a member of Morning Wholesalers—who had attended this meeting.

These witnesses testified that Feldman brought Bitz to the meeting and threatened them with a strike should they fail to "give Irving Bitz whatever he works out with you people." Record on Appeal 963. These same witnesses related that thereupon Feldman left the meeting and Bitz demanded $65,000 for himself and four Union officials including appellant in return for a new contract. Suburban agreed to pay $45,000 and Morning agreed to pay the $20,000 balance. Shortly thereafter Bitz demanded and was paid $7,500 on account. On January 31, 1957 the union membership rejected the contract which had been recommended by the appellant and the executive board and voted to strike. The strike was short lived and settled in about one week and in the middle of February another meeting was held and the balance which had been previously agreed upon was paid to Bitz.

Appellant asserts the following errors on appeal: (1) that there was a prejudicial variance between the indictment and the proof; (2) the appellant was denied a fair trial by reason of certain adverse newspaper articles which had been read by the jurors; (3) the trial court committed reversible error in denying appellant's motion for a severance; (4) the government failed to prove a prima facie case against appellant Feldman.

## I.

Plaintiff's claim of prejudicial variation between the indictment and the proof is based upon the fact that the

indictment charged extortion of $45,000 from Suburban Wholesalers whereas the proof showed a payment of $65,000 by both Suburban and Morning Wholesalers, who contributed $20,000. It is apparent that the variance, such as there was, did not "'affect the substantial rights' of the accused," Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). The accused in the case at bar was definitely informed as to the charges against him and any doubt which might conceivably exist is satisfied by the bill of particulars which clearly sets forth that the evidence would show a demand for $65,000 from both Suburban and Morning Wholesalers of which $45,000 was paid by Suburban. See United States v. Miller, 246 F.2d 486, 489 (2 Cir. 1957); United States v. Sing Kee, 250 F.2d 236, 242 (2 Cir. 1957).

## II.

Appellant alleges denial of a fair trial and reversible error in the denial of his motion for a mistrial on the ground that ten of the jurors had read a newspaper article concerning the trial of the action which singled out the name of the appellant identifying him as the former president of the Newspaper and Mail Deliverers Union and as one of the individuals remaining on trial, and named Irving Bitz and Harry Waltzer as co-defendants who had entered a plea of guilty. The trial judge upon learning that ten of the jurors had read the newspaper article, questioned the jurors as to whether the newspaper article would influence their judgment and whether they would follow the court's instructions. The court received assurances that the jurors would consider the case as developed in court and submitted to them by the judge.

In Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), the Supreme Court reversed a conviction of unlawfully dispensing drugs because of newspaper articles, disclosing defendant's prior criminal record and prior admissions of the defendant to having dispensed drugs without a license in the past, which were read by some of the jurors. In Marshall, as here, the trial judge gave precautionary instructions to the jury. The crux of the matter is whether the statements were so prejudicial as to require the trial judge, who has large discretion in such matters, Holt v. United States, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), to empanel a new jury.

As the Supreme Court stated in Marshall the action to be taken with respect to jurors reading an article containing inadmissible evidence in "each case must turn on its special facts." Marshall v. United States, supra, 360 U.S. at page 312, 79 S.Ct. at page 1173.

In the case at bar the newspaper article did not contain any detrimental statements concerning Feldman, but referred only to the guilty pleas of defendants Bitz and Waltzer. It was entirely consistent with his defense and the evidence presented for a jury to conclude that although extortion may have been committed by Bitz, appellant was not connected to the crime.[1] We do not think that the principle of Marshall extends to the instant case. See United States v. Crosby, 294 F.2d 928, 948–950 (2 Cir. 1961).

## III.

The denial of a severance and the motion for a new trial after the jury returned a verdict of guilty was within the court's discretion in view of the Sherman Act counts against all of the defendants, which were held to be sufficient, United States v. Bitz, 179 F.Supp. 80 (S.D.N.Y.1959) (motion to dismiss granted as to count one of the indictment and denied as to count two), reversed in

1. Excerpt from summation of counsel for appellant, Tr. p. 2209.

"Now, I have no doubt, ladies and gentlemen of the jury, that Irving Bitz took these people; I have no doubt that he sold them the idea that he can get the officials of the union to go along. But I deny, and the evidence doesn't warrant it, that any of the officials—and I am talking about Feldman now—knew anything about it or consented to it."

part 282 F.2d 465 (2 Cir. 1960) (count one held sufficient). The jury was instructed not to consider against Feldman the evidence concerning the 1955 extortion charged in Counts Three and Four against others. Since we must assume that the jury will follow proper cautionary instructions as to the personal nature of guilt, when such instructions are given, the common counts are pressed in good faith, and no exceptional circumstances indicating prejudice exist, the joinder is proper and the motion for a severance was properly denied. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); United States v. Schaffer, 266 F.2d 435 (2 Cir. 1959), aff'd 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).

## IV.

■■ The conclusion of the jury governs as to the credibility of witnesses. They and not we are the final judges as to veracity. Thus viewed, the evidence, specifically Gaynor's testimony of Feldman's demands and the payments made to his designee Bitz was sufficient for conviction.

Judgment affirmed.

HAYS, Circuit Judge (dissenting).

In Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) the Court reversed a judgment of conviction and ordered a new trial because some of the jurors had read newspaper articles in which it was stated that defendant, who was being tried for unlawfully dispensing certain drugs, had previously practiced medicine without a license. The Court said:

"We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. Cf. Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 218, 93 L.Ed. 168. It may indeed be greater for it is then not tempered by protective procedures."

In the present case, ten of the jurors were informed by reading a newspaper article that Irving Bitz, one of the appellant's codefendants had pleaded guilty. This information could not have been offered in evidence, and was, I believe, even more prejudicial to the defense than was the information to which the jury was exposed in the Marshall case.

I find nothing in the record of the present case to support the view of the majority opinion that Bitz's plea of guilty was consistent with appellant's defense.[1] On the contrary appellant's defense was confined to a simple, flat denial of the testimony of the government's witnesses who testified that Bitz collected the extortion money for Feldman and his fellow union officers. It is almost inevitable that, upon being told that Bitz had pleaded guilty, the jurors would assume that Feldman was also guilty.

The judgment of conviction should be reversed and a new trial granted.

---

1. The attempt by counsel for appellant to argue in his summation that Bitz was guilty but Feldman not guilty was addressed to a jury which knew from the newspapers that Bitz had pleaded guilty. Counsel was obviously forced by the circumstances to make that argument, however weak it may have been in the light of the evidence.