503 P.2d 381

**STATE of Arizona, Appellee,**

v.

**Robert Lee SKINNER, Appellant.**

**No. 2414.**

Supreme Court of Arizona,
In Banc.

Nov. 28, 1972.

Gary K. Nelson, Atty. Gen., Phoenix, by John S. O'Dowd, Asst. Atty. Gen., Tucson, for appellee.

Silverstone & Stern, by Maurice M. Stern, Tucson, for appellant.

HAYS, Chief Justice.

This is an appeal by the defendant, Robert Lee Skinner, from the conviction in Superior Court, of the crime of assault with a deadly weapon, and from his motion for a new trial after being sentenced to serve eight to ten years in the penitentiary.

The prosecution proved that a black, in the company of three other black friends, entered a Circle K Market in Tucson, became rowdy and used vulgar and profane language in the store in the presence of female customers; that the store manager asked them to leave and told another employee named Doubek to get the license number of the car in which the men came, while he himself called the police; that while Doubek was trying to get the license number, one of the blacks reached into the car, grabbed an empty beer bottle and smashed it on Doubek's forehead, cutting it deeply; that all the men drove off in the car. Defendant claimed an alibi and claimed that this was a case of mistaken identification.

In his brief, defense counsel claims that the photographic lineup was unduly suggestive, that he was improperly denied a continuance and was given only one and one-half hours to consult with his client before trial, and that a mistrial should have been declared because during the trial two jurors read in the morning newspaper the following article:

"CONVICTED KILLER FACES NEW CHARGE

"Robert Lee Skinner, 20, convicted slayer of liquor store clerk Mason

Branch, went on trial in Superior Court yesterday on the charge that he struck another store clerk with a beer bottle in February, 1970.

"The state alleges that Skinner, serving a life sentence at the Arizona State Prison on the March 10 Superior Court murder conviction, struck a Circle K Store clerk over the head when the clerk attempted to take down a license number.

"The clerk claims he acted after Skinner and three companions created a loud disturbance inside the store at 4401 N. Flowing Wells Road.

"Branch was shot to death during a holdup on Oct. 4, 1969. Three other men were also convicted in connection with that crime. Skinner was given an additional 8–10-year concurrent jail term for armed robbery.

"The current jury trial is before Cochise County Superior Court Judge Lloyd C. Helm. The prosecutor is Deputy County Atty. Horton Weiss who prosecuted Skinner on the murder and robbery counts. Attorney Maurice M. Stern represents Skinner."

When the article was brought to the attention of the trial judge, the jurors were interrogated individually and two of them admitted having read part of the article. Both stated that as soon as they saw that the article referred to Skinner, they stopped reading it, and that it would not influence their decision. The court therefore denied a motion for a mistrial and later denied a motion for a new trial.

Since we have decided that it was error to deny the motion for a mistrial, we will not discuss the other issues raised by defendant.

The trial court stated that it believed the jurors' statements that they would judge the case solely on the evidence, admonished the entire jury to do so, and ordered the trial to continue.

In the case of Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed. 1250, the trial judge handled the matter in the same way, but the Supreme Court of the United States reversed and said:

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. . . . Generalizations beyond that statement are not profitable, because each case must turn on its special facts. We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. . . . It may indeed be greater for it is then not tempered by protective procedures. . . . [W]e think a new trial should be granted."

As was stated in United States v. Montgomery, 42 F.2d 254, 257, the granting of a mistrial assured that the course of justice in the courts "should seem, as well as be, free from all outside influence, direct or indirect."

The State seeks to distinguish Marshall, supra, by the fact that in it seven jurors read the article, while in the instant case, only two read it. However, the rationale is the same. Defense counsel argues that, because of the prior conviction, he intended to prove the alibi defense without placing the defendant on the stand, in order to keep the jury from learning that the defendant was a convict. The publication of the newspaper article took away the defendant's right to remain silent and not take the stand. When the moment of decision arrived, knowing that at least two jurors had this knowledge, defense counsel decided to put defendant on the stand to bolster his alibi. On cross-examination, the prosecutor asked him if it were not a

fact that he had been convicted of the felony of armed robbery, which defendant admitted. The murder conviction was not mentioned. The actual facts as to the priors is that defendant was convicted of both armed robbery and murder. Until the trial, he was confined to the state penitentiary under a life sentence for murder (that appeal is pending) and a term of years for armed robbery. These two sentences were running concurrently, as is also the eight- to ten-year sentence given him in the instant case.

The case is reversed and remanded for a new trial.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD, and HOLOHAN, JJ., concur.